**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**WEL COMPANIES,**
**INCORPORATED,**

        **Plaintiff,**

        **v.**

**HALDEX BRAKE PRODUCTS**
**CORPORATION,**

        **Defendant.**

**Case No. 2:19-cv-912**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth Preston Deavers**

## OPINION AND ORDER

The following matters are before the Court: Plaintiff WEL Companies, Incorporated's ("Plaintiff" or "WEL") Motion for Leave to File a Second Amended Complaint Instanter (ECF No. 83), Defendant Haldex Brake Products Corporation's ("Defendant" or "Haldex") Motion in Limine (ECF No. 74), and Defendant's Motion for Summary Judgment (ECF Nos. 47, 93).[1] The motions are ripe for review. For the following reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint Instanter (ECF No. 83) is **GRANTED**, Defendant's Motion in Limine (ECF No. 74) is **DENIED**, and Defendant's Motion for Summary Judgment (ECF Nos. 47, 93) is **GRANTED in part and DENIED in part**.

### I.

Plaintiff is a Wisconsin corporation that provides transportation, logistics, and warehousing services. (First Am. Compl. ¶ 1, ECF No. 70.) Defendant is a Missouri corporation that

---

[1] Defendant filed a motion for summary judgment in January of 2020. (ECF No. 47.) The Court suspended Plaintiff's response until April of 2020 so that further discovery could occur. (*See* ECF No. 48.) The Court also allowed Defendant to supplement its motion for summary judgment in April of 2020, which it did. (*See id.*) Thus, Defendant has filed two very similar motions for summary judgment, which the Court will consider together as one motion. The page numbers cited from Defendant's motion for summary judgment will refer to ECF No. 93, unless noted otherwise.

manufactures and sells brake systems and air suspension systems for heavy trucks and trailers. (*Id.* ¶ 2.) This case arises out of an incident that occurred on January 30, 2018 on I-70 Westbound in Columbus, Ohio. (*Id.* ¶ 5.)

On January 30, 2018, Plaintiff's driver, Christopher Cox, was driving a truck hauling a trailer of beer that he had picked up at a Budweiser distribution center in Columbus, Ohio. (Cox Dep. 21, 23–27, ECF No. 94-1.) The trailer had a Haldex Gold Seal brake chamber that Defendant manufactured. (Def.'s Mot. Summ. J. at 8, ECF No. 93.) While driving on I-70, Mr. Cox noticed that "the brake seemed like it was pushing back a little" and "dragging" and the "truck was not rolling like it normally does." (Cox Dep. 21, 23–27.) Mr. Cox stopped and called Plaintiff's night dispatcher Leo Martinez. (*Id.*) Mr. Martinez recommended Mr. Cox drive to the Travel America truck stop about fifteen miles down I-70. (*Id.*)

Mr. Cox drove toward the truck stop but stopped when he heard a popping noise and saw smoke coming from the rear of the truck. (*Id.*) Mr. Cox found the left rear inside of the tractor was on fire. (*Id.*) He attempted to put the fire out with a fire extinguisher but was unsuccessful. (*Id.*) The fire damaged the tractor, the trailer, and the cargo of beer. (*Id.*)

Plaintiff alleges, based on expert Hernan Mercado-Curujo's testimony, that the origin of the fire was a defective spring within the Gold Seal brake chamber. (Pl.'s Resp. Def.'s Mot. Summ. J. at 3, ECF No. 96, hereinafter "Pl.'s Resp." (citing Mercado Dep. 12–13, ECF No. 96-1 ("[T]he scope of my analysis is the fire origin and cause. And I have, of course, identified the spring as the one component that broke and started this whole thing.").)) Plaintiff also relies on Christopher Jamieson's testimony that "based on [his] background as an engineer in brake chamber design working for Haldex, working on these products, [he] know[s] there is a defect in the spring design." (Jamieson Dep. 16, No. 96-2.) Mr. Jamieson explained that "[t]he spring in its installed

state is too highly stressed . . . [a]nd during the normal course of its life, once the paint degrades because of the installed state it [has] the coil stack very close . . . " (*Id.*) Mr. Jamieson also stated Defendant knew about the defect but did not change it because of the cost. (*Id.* at 21.)

Plaintiff also provides Defendant's lab reports dating back to 2014 analyzing the brake chamber. (*See* Pl.'s Resp. at Ex 5.) The lab reports raise concerns about spring failures and propensity to "corrosion pitting leading to fatigue crack failure." (*See id.*) Additionally, Plaintiff provides Haldex employees' emails noting that other motor carriers were also experiencing issues with Haldex Gold Seal brake chambers. (*See id.* at Exs. 6–9.) The emails referred to "hot brakes," an "explosion," "potential chamber issues," "thermal events," and "destruction due to fire." (*Id.*)

Plaintiff sued Defendant alleging three claims: (1) negligent design, manufacture, inspection, and/or construction of the brake chamber that malfunctioned in the WEL truck; (2) breach of express or implied warranty that the brakes would be free of defects, merchantable, and fit for the ordinary purpose for which brake systems are used; and (3) strict liability for a defective product and failure to conform to express or implied warranties. (*See* First Am. Compl.) On February 20, 2020, Plaintiff filed a First Amended Complaint which withdrew an allegation about the spring and also withdrew Travelers Indemnity Company of Connecticut ("Travelers") from the lawsuit. (*See* Mot. Leave File First Am. Compl. Instanter, ECF No. 64, hereinafter "Mot. Am.") Plaintiff originally included Travelers as a plaintiff because Plaintiff believed Travelers would be required to reimburse Plaintiff for some of the damage. (*See id.*) Plaintiff subsequently discovered, however, that it had incurred the damages directly and Travelers would not be required to reimburse it. (*See id.*)

Plaintiff states:

WEL is seeking recovery of economic damages in several forms: (1) WEL's lost earnings which resulted from the destruction of the trailer and significant damage

to the tractor, (2) costs incurred in cleaning up the scene, (3) costs incurred for towing the destroyed trailer and damaged tractor away from the scene, (4) storage costs incurred following the incident, and (5) disposal costs. WEL also seeks recovery of compensatory damages which arise from (1) physical damage to the tractor, (2) physical destruction of the WEL trailer, and (3) destruction of the cargo of Anheuser Busch contained therein.

(Pl.'s Resp. at 6.)

The Court will first address Plaintiff's motion for leave to file a second amended complaint, then Defendant's motion in limine, and finally, Defendant's motion for summary judgment.

## II.

Trial courts enjoy broad discretion in deciding motions for leave to amend a complaint. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). A party can amend their pleading once "as a matter of course" within "21 days after serving it" or if the pleading requires a response, "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. Pro. 15(a)(1). After this time has passed, a party may amend its pleading only with the opposing party's consent or by leave of court. *Id.* at 15(a)(2). "[L]eave shall be freely given when justice so requires." *Id.* Rule 15 maintains a "liberal standard of permitting amendments to ensure the determination of claims on their merits." *Mahdy v. Mason Sch. Dist.*, No. 1:16-cv-845, 2017 WL 25504, at *3 (S.D. Ohio Jan. 3, 2017) (citing *Marks v. Shell Oil Co.,* 830 F.3d 68, 69 (6th Cir. 1987)).

Additionally, when a case has a scheduling order, Rule 16 provides that, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro 16(b)(4). In determining whether good cause exists, the primary consideration is the moving party's diligence in attempting to meet the scheduling order's requirements. *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009).

Here, the time has passed for an amendment as a matter of course and Defendant has not consented to the amendment. Thus, Plaintiff must obtain leave of this Court. Plaintiff seeks leave to amend the complaint to add a claim under the Ohio Products Liability Act ("OPLA") and to include punitive damages in its relief sought. (*See* Mot. Am.)

Defendant opposes Plaintiff's motion arguing: (1) there has been undue delay; (2) the amendment causes undue prejudice; and (3) Plaintiff has repeatedly failed to cure the deficiencies in its complaint. (Def.'s Mem. Opp'n Pl.'s Mot. Leave File Second Am. Compl. Instanter, ECF No. 91, hereinafter "Def.'s Resp. Mot. Am.")

### 1. Delay

"Denial of a motion to amend a complaint may be appropriate where there is: undue delay, bad faith, or dilatory motive on the part of the movant." *More v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "Ordinarily, [however,] delay alone, does not justify denial of leave to amend." *Id.*; *see also Moore v. Paduch*, 790 F.2d 557, 562 (6th Cir. 1986) (reversing the district court's denial of a motion for leave to amend, concluding that while there was undue delay, the prejudice was so slight that "rejection of the amendment would preclude [the] plaintiff's opportunity to be heard on the merits on facts which [were] well known to the parties and which were pleaded at the outset"); *Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 830 (6th Cir. 2015) ("In the context of a motion to amend a complaint, delay alone, . . . without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial." (internal citations omitted)).

Defendant argues Plaintiff unduly delayed amending its complaint. (*See* Def.'s Resp. Mot. Am. at 2–7.) Defendant contends Plaintiff was aware of two previous lawsuits against Haldex raising similar claims, and thus, should have included punitive damages in its first complaint. (*Id.*

at 2.) Additionally, Defendant contends the discovery Plaintiff relies on to support amending the complaint occurred well before the motion was filed. (*Id.*) Finally, Defendant argues good cause has not been shown to modify the scheduling order. (*Id.* at 8.)

Plaintiff, in contrast, argues it has not unduly delayed seeking this amendment for it has been diligently pursuing this case since it was filed. (Mot. Am. at 4.) As to punitive damages, Plaintiff argues "[t]he evidence required to properly support a request for punitive damages only became available to plaintiff through depositions of various Haldex employees and the subsequent paper discovery request in response to information gathered during the aforementioned depositions." (Pl.'s Reply Brief Supp. Mot. Leave to File Second Am. Compl. Instanter, at 2–3, ECF No. 91, hereinafter "Pl.'s Reply Mot. Am.") Plaintiff notes that while these depositions were taken many months ago, the transcripts only recently became available. (*Id.* at 2–3.) Further, Plaintiff was delayed in obtaining the documents for it had to file a motion to compel. (*Id.*)

As to the claim under the OPLA, Plaintiff argues that this Court has previously allowed parties to amend their complaints to add claims under the OPLA when common law claims were challenged as abrogated by the OPLA. (*Id.* (citing *Gordon v. B. Braun Med. Inc.*, No. 1:19-cv-121, 2020 WL 1491378, at \*9, 13–14 (S.D. Ohio Mar. 27, 2020) (finding Plaintiff's common law claims for breach of an express warranty abrogated by the OPLA and allowing Plaintiff to amend her complaint to reassert her claim under the OPLA); *Stratford v. SmithKline Beechman Corp.*, No. 2:07-cv-639, 2008 U.S. Dist. LEXIS 84826, at \*15–16, 19–20 (S.D. Ohio June 17, 2008) (finding the plaintiff's common law claims of negligence and breach of express warranties preempted by the OPLA and dismissing the claim without prejudice in order to plead the allegations pursuant to the OPLA); *Williams v. Bausch & Lomb Co.*, No. 2:08-cv-910, 2009 WL 2983080, at \*4 (S.D. Ohio Sept. 14, 2009) (dismissing the plaintiff's claims for negligence, breach

of implied warranties, breach of express warranties, negligent misrepresentation, and intentional infliction of emotional distress without prejudice to replead under the OPLA).) Finally, Plaintiff provides that its request does not require modification of a scheduling order. (*Id.* at 4.)

In this case there has been delay as the case was filed about a year before Plaintiff filed this motion to amend. The Court finds, however, the delay was not undue, in bad faith, or with a dilatory motive. As to the addition of punitive damages, Plaintiff received discovery from Defendant in January of 2020, after filing a motion to compel, which gave it reason to believe Defendant had prior knowledge of the springs' defect. Additionally, Plaintiff obtained transcripts from two important depositions in March of 2020 leading to the same conclusion. Thus, Plaintiff simply waited until it had a good faith basis to believe punitive damages were warranted before seeking to add them to the Complaint.

Additionally, Defendant's argument that Plaintiff should have included the claim for punitive damages in its original complaint based on two prior cases against Defendant asking for punitive damages is not persuasive. Plaintiff was not required to assume punitive damages were warranted in this case without knowledge of the evidence available in the previous cases. Defendant has not shown that Plaintiff intended in bad faith to delay the addition of the punitive damages claim.

As to the OPLA claim, the Court agrees with Plaintiff that this Court has previously allowed litigants to add a claim under the OPLA when the defendant argues a common law claim is abrogated by the OPLA. *See Gordon*, 2020 WL 1491378 at *9–10; *Stratford*, 2008 U.S. Dist. LEXIS 84826 at *15–16, 19–20; *Williams*, 2009 WL 2983080 at *4.

Finally, the Court finds there is no need to modify a scheduling order at this point because this motion was made prior to the dispositive motion deadline. Defendant does not indicate another

scheduling order that have to be modified to allow the amendment. Regardless, the Court believes there is good cause to modify any previous order to allow this amendment and determine the outcome of this case on its merits. *See Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (noting "cases should be decided on their merits not merely on technicalities").

### 2. Prejudice

In addition to considering any undue delay, the Court should also consider whether there is "undue prejudice to the opposing party by virtue of the amendment." *Duro Bag Mfg. v. Printing Servs. Co.*, No. 1:08-cv-842, 2010 WL 11538000, at *2 (S.D. Ohio Feb. 5, 2010) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). "To deny a motion to amend, a court must find at least some significant showing of prejudice to the opponent." *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (internal citations omitted).

Defendant argues it will be prejudiced if the Court allows the amendment because Defendant's motion for summary judgment relies on plaintiff's failure to plead an OPLA claim. (Def.'s Resp. Mot. Am. at 6–7.) Defendant also contends Plaintiff has previously plead untrue claims, such as the subrogation claim, and thus, this amendment causes further prejudice. (*See id.*)

Plaintiff argues Defendant will not be prejudiced because Defendant has been aware of the basis for the amendment "long before suit was even filed." (Pl.'s Reply Mot. Am. at 3.) Plaintiff contends the new claims arise out of the same nexus of facts as were plead in the previous complaints, all of the discovery already conducted is just as applicable to the amended complaint, and the motion to amend was filed prior to the dispositive motion deadline and thus, Defendant could have addressed the issues in its motion for summary judgment. (*Id.*)

The Court finds no significant prejudice here. Defendant has certainly been aware of the possibility of an OPLA claim as Defendant asserted Plaintiff's common law claims were abrogated

by the OPLA in January of 2020 when Defendant filed its first motion for summary judgment. (Def.'s Mot. Summ. J. at 6, ECF No. 48.) Additionally, as to both the OPLA claim and the claim for punitive damages, Defendant provided the evidence Plaintiff relies on to assert the claims.

Additionally, this motion was filed prior to Defendant's motion for summary judgment and thus Defendant was aware that Plaintiff sought to add these claims and could have addressed them in its motion. The Court does not find undue prejudice to Defendant in allowing the amendment.

### 3. Repeated Failure to Cure Deficiencies

A motion for leave to amend may be denied if there has been a repeated failure to cure deficiencies with previous amendments. *United States ex rel David Anton v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 886 (S.D. Ohio 2013) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).

Defendant argues that Plaintiff's complaint, containing claims for common law negligence, breach of warranty, and product liability, is legally defective because these claims are pre-empted by the OPLA. Defendant alleges Plaintiff has repeatedly failed to cure this deficiency. The Court will not deny the motion to amend on this basis because, as explained later in this Opinion, the Court finds there are times when common claims are not abrogated by OPLA claims and times when common law claims and OPLA claims can be plead in the alternative. *See infra* Section IV.

In sum, Plaintiff's amendment is not unduly delayed, does not cause Defendant undue prejudice, and Plaintiff has not repeatedly failed to cure a deficiency in its Complaint. Thus, Plaintiff's Motion for Leave to File a Second Amended Complaint Instanter is **GRANTED**. The Court will continue with the analysis of the remaining pending motions using Plaintiff's Second Amended Complaint which was filed as an exhibit. (*See* Mot. Am at Ex. 1.)

### III.

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow a court to rule on evidentiary issues prior to trial to ensure an evenhanded and expedient trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Notwithstanding this well-meaning purpose, courts are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *see also Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed.").

To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *cf. Luce*, 469 U.S. at 41, n.4. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Defendant seeks to exclude "Plaintiff's [u]nrecoverable [d]amage [c]laims." (Def.'s Mot. Limine at 1, ECF No. 74.) Defendant argues such damages are barred by the terms of the Haldex Warranty for the brake chamber (the "Warranty"), the claims are abrogated by the OPLA, and

under the OPLA these types of damages are unrecoverable. (*See id.*) Plaintiff argues that this motion is procedurally improper as it is in effect a dispositive motion. (Pl.'s Brief in Opp'n Haldex's Mot. Limine at 4–6, ECF No. 84, hereinafter "Pl.'s Resp. Mot. Limine.")

"[A] motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). A motion in limine is not intended to resolve non-evidentiary matters prior to trial for in civil actions a mechanism already exists for this purpose, the summary-judgment motion. *Id.* (citing *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010) ("In light of their limited purpose, motions in limine should not be used to resolve factual disputes, which remains the function of a motion for summary judgment.")).

The Sixth Circuit has recognized that motions in limine that are essentially motions for summary judgment should not be granted. *Id.* 561–62 (citing *Meyer v. Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) (reversing a district court's grant of a motion in limine because it "essentially converted [a] motion in limine into a motion for summary judgment," which "did not allow for full development of the evidence and deprived [the defendant] of an opportunity to present all pertinent material to defend against the dismissal of [a defense']"); *Bradley*, 913 F.2d at 1070 (reversing a district court's grant of a motion in limine finding the "procedure converted the *in limine* motion into one for summary judgment, but without the procedural protections of notice which the federal rules require before judgment on the merits may be granted"); *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (affirming a denial of a motion in limine because the argument that a party could not prove its lost profits with reasonable certainty went to the sufficiency of the evidence which is proper on

a motion for summary judgment but not in a motion to exclude evidence prior to trial); *Bell v. Prefix Inc.*, No. 05-74311, 2009 U.S. Dist. LEXIS 101889, at *1 (E.D. Mich. Nov. 2, 2009); *Goldman v. Healthcare Mgmt. Sys. Inc.*, 559 F. Supp. 2d 853, 873 (W.D. Mich. 2008) (denying a motion in limine and noting the "[d]efendants' motion does not raise questions of the admissibility of certain evidence or suggest that the jury would somehow be prejudiced by the evidence.").

Defendant asks this Court to exclude all evidence of damages. This is in effect a motion for summary judgment for it entirely disposes of the case. It is telling that Defendant asserts the same arguments in its motion in limine regarding the abrogation of Plaintiff's OPLA claims and the applicability of the Warranty as it does in its motion for summary judgment. Additionally, Defendant's motion cites no rules of evidence or what evidence it seeks to exclude. Instead, Defendant makes broad arguments as to why entire claims should not succeed regardless of the evidence introduced.

Due to Plaintiff's persuasive argument that this motion is procedurally improper, and because this motion raises the same arguments as are raised in the motion for summary judgment, which is also currently before the Court, the Court chooses to consider the arguments in connection with the motion for summary judgment. This ensures the arguments are being considered in a forum which gives both parties the procedural protections of the federal rules in connection with dispositive motions. *See Bradley*, 913 F.2d at 1070. The motion in limine is **DENIED**.

## IV.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has

12

the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

Defendant argues it is entitled to judgment as a matter of law because: Plaintiff's common law claims are abrogated by the OPLA and the Warranty does not allow Plaintiff to collect the damages it seeks.

1. **Common Law Claims and the OPLA**

Plaintiff's first three claims are brought as common law causes of action for product liability. These claims are negligence, breach of express or implied warranty, and strict liability.

Defendant argues these claims are abrogated by the OPLA. Plaintiff argues these claims fall into an exception for claims brought to recover economic damages.

### a. Common Law Claims and the OPLA

In 1988 "Ohio product liability law was consolidated under the OPLA, Ohio Revised Code section 2307.71 through section 2307.80, and applies to '[a]ny recovery of compensatory [or putative] damages based on a product liability claim.'" *Mitchel v. Proctor & Gamble*, No. 2:09-cv-426, 2010 U.S. Dist. LEXIS 17956, at *5 (S.D. Ohio Mar. 1, 2010) (citing Ohio Rev. Code § 2307.72(A), (B)); *see also Stratford*, 2008 U.S. Dist. LEXIS 84826 at *9; *Bd. of Trustees of the Worthington Pub. Library v. Hickson Corp.*, No. C2-98-1073, 1999 U.S. Dist. LEXIS 21167, at *13 (S.D. Ohio Sept. 8, 1999). Pursuant to Ohio Revised Code § 2307.71(A)(13), a "product liability claim" is defined as:

> [A] claim or cause of action . . . that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> > (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> >
> > (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
> >
> > (c) Any failure of that product to conform to any relevant representation or warranty.

"Claims that are authorized by the OPLA should be pled with reference to the applicable provision of the OPLA." *Stratford*, 2008 U.S. Dist. LEXIS 84826 at *15.

In 2005, the Ohio General Assembly amended the OPLA to state that "all common law claims arising from damages in connection with product liability claims are abrogated by the OPLA." *Id.* at *12 (citing Ohio Rev. Code § 2307.71(B) (in enacting the OPLA, the legislature

14

intended to "abrogate all common law product liability claims or causes of action")); *Meta v. Target Corp.*, 74 F. Supp. 3d 858, 861 (N.D. Ohio 2015) ("The OPLA abrogates common law product liability causes of action."); *Mitchell*, 2010 U.S. Dist. LEXIS 17956 at *6 ("Under the terms of an amendment to the law by the Ohio General Assembly, effective April 7, 2005, the OPLA eliminated common law product liability causes of action."). Thus, claims brought pursuant to the common law, instead of the OPLA, are now routinely dismissed. *See e.g., Miller v. Alza Corp.*, 759 F. Supp. 2d 929, 943 (S.D. Ohio 2010) (granting summary judgment on Plaintiff's negligence claim as it was abrogated by the OPLA); *Gordon*, 2020 WL 1491378 at *9, 13–14 (finding Plaintiff's common law claims for breach of an express warranty abrogated by the OPLA and allowing amendment); *Stratford*, 2008 U.S. Dist. LEXIS 84826 at *15–16, 19–20 (finding the plaintiff's common law claims of negligence and breach of express warranty preempted by the OPLA and dismissing the claim without prejudice); *Williams*, 2009 WL 2983080 at *4 (dismissing plaintiff's claims for negligence, breach of implied warranty, breach of express warranty, negligent misrepresentation, and intentional infliction of emotional distress without prejudice).

As such, the OPLA abrogates Plaintiff's common law claims for negligence, breach of warranty, and strict product liability. *See Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 844 (S.D. Ohio 2013) ("Because the negligence claim is covered by these provisions, that claim is displaced by the OPLA and must be pled pursuant to the statute."); *Miller*, 759 F. Supp. 2d at 943 (finding the OPLA abrogates common law warranty claims); *McConnell v. Cosco, Inc.*, 238 F. Supp. 2d 970, 974–75 (S.D. Ohio 2003) ("Strict products liability claims in Ohio are governed by Ohio Revised Code sections 2307.71 through 2307.80."). Thus, unless Plaintiff's common law claims fall into an exception, Defendant's motion for summary judgment on these claims must be granted.

### b. Damages under the OPLA and the Economic Loss Doctrine

"Under the OPLA, a claimant is precluded from recovering for economic damages alone and can only seek recovery that is allowed by the terms of the statute." *Mitchell*, 2010 U.S. Dist. LEXIS 17956 at *8 (citing Ohio Rev. Code § 2307.71(G) (defining "harm" as "death, physical injury to person, serious emotional distress, or physical damage to property other than the product in question," and clarifying that "[e]conomic loss is not "harm.")). A plaintiff's recovery of economic damages under the OPLA is contingent on the plaintiff first recovering non-economic damages. *See Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 881 (N.D. Ohio Apr. 13, 2013) (citing Ohio Rev. Code § 2307.79(A)). This rule is derived from the common law economic loss doctrine which prohibits purchasers of products from recovering purely economic damages in tort law. *See HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1028 (6th Cir. 2003) ("The economic loss rule prohibits purchasers of products from recovering purely economic damages under most tort theories."); *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996) (holding the economic loss doctrine survived the codification of Ohio product liability law); *see also East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 868–71 (1986) (adopting the "economic loss doctrine," the rule in most jurisdictions at the time, limiting a plaintiff seeking economic damages to remedies under contract law and precluding recovery in tort).

Thus, despite the abrogation clause in the OPLA, many Ohio courts have allowed purchasers who are not in privity with the manufacturer to bring common law claims for economic damages because they cannot bring such claims under the OPLA. *See Huffman*, 961 F. Supp. 2d at 881 (finding the plaintiff's common law product liability claim for damage to his defective washing machine not abrogated by OPLA); *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06CV763, 2007 U.S. Dist. LEXIS 42871, at *6–7 (N.D. Ohio, June 13, 2007) (noting that while

the plaintiff's common law claim for damage to the area around the allegedly defective wiring was preempted by the OPLA, the plaintiff's common law claim for economic loss to the wiring itself was not preempted); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 706, 719 (N.D. Ohio 2014) (allowing a common law claim seeking purely economic loss to proceed because it does not fit into the OPLA's definition of a statutory product liability claim); *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Entrers.*, 50 N.E.3d 955, 966 (Ohio Ct. App. 2015) (holding the trial court erred in dismissing the plaintiff's common law claim for products liability because the plaintiff sought damages only for economic loss, the damage to the value of the defective grinder and consequential damages therefrom, which does not fall into the purview of the OPLA).

In order for common law claims to survive, courts require the damages sought to be outside those that the OPLA allows. The damages must be economic losses defined as "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product." Ohio Rev. Code § 2307.71(A)(2); *see Meta*, 874 F. Supp. 3d at 861–62 (finding the plaintiff's common law negligence claim for defective wipes abrogated by the OPLA because the plaintiff could first recover for the physical damage to his septic system, which would allow him to recover his economic losses under the OPLA); *Mitchell*, 2010 U.S. Dist. LEXIS 17956 at *10–11 (finding a claim preempted by the OPLA because the damages sought were not purely economic because they were not based on the defectiveness of the drug itself but instead because the drug caused undesirable side effects).

Finally, this Court has allowed common law claims and OPLA claims to be brought together, as long as they are plead in the alternative. *Great Northern Ins. Co. v. NMW of N. Am. LLC*, 84 F. Supp. 3d 630, 649 (S.D. Ohio 2015); *see also Huffman*, 961 F. Supp. 2d at 882.

The Sixth Circuit has not expressly adopted this exception to the general rule that the OPLA abrogates common law claims. *Meta*, 74 F. Supp. 3d at 862 n.5. The Sixth Circuit has acknowledged, however, that "Ohio law permits ordinary consumers who are not in privity of contract with product manufacturers to bring claims such as negligent design and negligent failure-to-warn in order to recover damages for economic injury only." *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 856 (6th Cir. 2013).

The parties in this case disagree as to whether Plaintiff's common claims are abrogated by the OPLA. Plaintiff argues that its claims seek economic damages and thus it can plead them under the common law, and further, under the OPLA, in the alternative. Defendant argues that even if such exception still exists, despite the 2005 amendment to the OPLA, Plaintiff, a commercial buyer, cannot bring claims under the common law pursuant to the exception.

### c. Commercial Buyers Seeking Economic Damages

Assuming that the exception to the economic loss rule survived the 2005 amendment to the OPLA,[2] there is still a question of whether commercial buyers can assert common law claims for economic damages. Ohio courts are split on this issue. Many cases in Ohio specifically state that commercial buyers cannot bring such common law claims. *See Narcol, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 626 (Ohio Ct. App. 2003) ("Ohio does not provide a common law remedy

---

[2] Defendant points out that the many of the cases establishing the exception to the economic loss rule were decided prior to the OPLA's 2005 amendment which made clear that claims brought under the common law are abrogated by the OPLA. *See e.g., Chemtrol*, 537 N.E.2d at 635 (occurring in 1989); *LaPuma* 661 N.E.2d at 716 (occurring in 1996). Since 2005, some courts have continued to apply the exception to the economic loss rule and allowed plaintiffs seeking only economic damages to bring product liability claims under the common law. *See e.g., Huffman*, 961 F. Supp. 2d at 880–84; *Hoffer*, 2007 U.S. Dist. LEXIS 42871 at *6–7. In *Meta v. Target Corporation*, however, the Northern District of Ohio expressed hesitation with cases continuing to apply the exception by relying on cases which predate the 2005 OPLA amendment. 74 F. Supp. 3d at 863 (noting that the decision in *Huffman* that a consumer could bring a common law action or economic damages relied on *LaPuma* "[d]espite the fact that *LaPuma* predate[d] the 2005 amendment to the OPLA"). Thus, there appears to be some concern about the continued validity of the exception. Because this Court ultimately finds it inapplicable to the facts of the instant case the Court need not resolve this issue at this time.

to a commercial purchaser of a defective product for a commercial loss."); *Midwest Ford v. C.T. Taylor Co.*, 694 N.E.2d 114, 116–17 (Ohio Ct. App. 1997) ("[W]e find that the common law action in tort for purely economic loss from defective products, based upon implied warranty theory, is not available to commercial buyers."); *Apostolos Grp., LLC v. BASF Construction Chems., LLC*, No. 25415, 2011 Ohio App. LEXIS 1909, at *12–14 (Ohio Ct. App. May 11, 2011) (holding a commercial buyer could not sue a manufacturer through a common law strict liability claim for a defective product); *Roxy Home Improvement, LLC v. Mercedes-Benz USA, LLC*, No. 1:17-cv-1817, 2018 U.S Dist. LEXIS 59921, at *13 (N.D. Ohio Apr. 9, 2018) ("As commercial consumers in privity with [the defendant], plaintiffs cannot maintain tort claims against manufacturer [defendant] for purely economic loss."); *Bd. of Trustees of the Worthington Pub. Library*, 1999 U.S. Dist. LEXIS 21167 at *13 ("Plaintiff's attempt to assert a tort claim for breach of warranty under Ohio's common law must, likewise, fail because Ohio does not provide a common law remedy in tort to a commercial purchaser of a defective product for purely economic losses."); *Riemeier Lumber Co. v. Universal Forest Prods. E. Div.*, No. 1:08-cv-218, 2008 U.S. Dist. LEXIS 137602, at *11–12 (S.D. Ohio Sept. 26, 2008) (finding Ohio's economic loss doctrine bars the commercial plaintiff's tort claims for implied warranties and negligence).

Many of the cases that Plaintiff relies on are brought by non-commercial buyers. *See Hoffer*, 2007 U.S. Dist. LEXIS 42871 at *4 (case brought by consumer, individually and on behalf of other consumers, who purchased the product at issue for use in their residential dwellings); *Huffman*, 961 F. Supp. 2d at 878 (class action on behalf of consumers who purchased a particular washing machine for personal, family, or household purposes).

In holding that commercial buyers cannot sue manufacturers under the common law for an economic loss, Ohio courts note that commercial buyers likely have alternative remedies. For

example, the Ohio Supreme Court stated that "a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code." *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 635 (Ohio 1989); *see also HDM Flugservice*, 332 F.3d at 1030 ("Among commercial parties, the UCC provides a comprehensive scheme for parties to recover their economic losses.").

Ohio courts reason that allowing commercial buyers to recover in tort disrupts contract remedies already established. One court stated, that "[p]ermitting commercial parties to recover economic losses in tort would allow a purchaser to reach back up the production and distribution chain, thereby disrupting the risk allocations that have been worked out in the transaction comprising the chain." *HDM Flugservice*, 332 F.3d at 1030 (internal citations omitted); *see also East River Steamship*, 476 U.S. at 865 (noting that if the expansion of product liability law "were allowed to progress too far, contract law would drown in a sea of tort."). In contrast, enforcing the economic loss rule forces commercial parties to resort to contract law to recover their economic losses thereby ensuring they obtain the benefit of their bargain. *Id.*

Moreover, when looking specifically at common law claims for strict liability, courts note that the policy underlying strict liability, which forces manufacturers to internalize the costs of injuries, does not favor allowing commercial parties to recover economic losses. *See id.*; *Apostolos Grp.*, 2011 Ohio App. LEXIS 1909 at *12–13 (noting than none of the purposes justifying strict product liability apply to a case involving a commercial entity purchasing a defective product for a commercial use); *Midwest Ford*, 694 N.E.2d at 118 (noting that the considerations that give rise to strict liability do not apply between commercial parties).

Finally, courts preventing commercial parties from suing for economic losses refer to the differences between commercial and consumer buyers.  For example, one court noted:

> It is axiomatic that a commercial entity is presumed to have a higher degree of legal sophistication than the average customer who purchases a product for a noncommercial use.  Thus, while the relative bargaining power of a commercial consumer will vary from case to case, the commercial consumer functions in a different capacity than the average consumer.

*Apostolos Grp*, 2011 Ohio App. LEXIS 1909 at *13–14.

Despite these cases preventing commercial buyers from suing for an economic loss under the common law, there are Ohio cases that allow commercial buyers to bring common law claims for economic damages.  *See Ohio Dep't of Admin Servs. v. Robert P. Madison Int'l, Inc.*, 741 N.E.2d 551, 557 (Ohio Ct. App. 2000) (holding a trial court erred in deciding a commercial buyer of a defective product could not recover from a supplier because the court found "no basis for distinguishing between so-called commercial and noncommercial buyers"); *Caterpillar Fin. Servs.*, 50 N.E.3d at 966 (allowing a commercial purchaser to sue under the common law for economic damages).  These cases, however, are noticeably fewer than those holding commercial consumers cannot sue under the common law for economic damages.  Additionally, courts that do allow commercial buyers to sue for economic damages make clear that the parties in the case are not in privity, and thus their contract claims have failed.  *Id.* at 558; *Caterpillar Fin. Servs.*, 50 N.E. 3d at 966.

Here, Plaintiff is a commercial buyer of Defendant's brake system for use commercially in its trucks' trailers.  This Court finds the logic of the majority of Ohio courts, which hold commercial buyers cannot sue for economic losses through a common law products liability action, persuasive in this instance.  Importantly, Plaintiff was not without remedies.  Plaintiff could have sued under the OPLA, for non-economic losses, which in fact it has now done.  *See Meta*, 74

F. Supp. 3d 858 at 864 (finding the plaintiff may not assert a common law product liability claim for economic loss when he may recover the same damages under the OPLA). Additionally, Defendant points out Plaintiff could have sued for a breach of an express warranty under the Ohio Uniform Commercial Code. Allowing Plaintiff to sue under the common law would disrupt contract law and its allocation of risks and losses.

Thus, in sum, the Court will follow the Ohio courts which find that commercial buyers cannot bring common law product liability claims for economic losses. Thus, Plaintiff's three common law claims are abrogated by the OPLA. Defendant's motion for summary judgment on Counts I, II, and III, is **GRANTED**.

### 2. The Warranty

Plaintiff has one remaining claim, Count IV, claiming a violation of the OPLA. Count IV seeks damages in excess of $75,000 and punitive damages. (Second Am. Compl. ¶ 42, ECF No. 83-1.) Defendant argues that Plaintiff cannot recover the damages it seeks because of the Warranty and thus it is entitled to judgment on this claim. (Def.'s Mot Summ. J. at 8.)

Defendant asserts that the brake chamber in question was covered by the Haldex Standard O.E.M. Product Warranty Policy for Commercial Truck and Trailer Products as revised in September of 2012 and Plaintiff does not contend otherwise. (*Id.* at Ex. 2; Pl.'s Resp. at 7.) The Warranty asserts that the brake chamber "will be free from defects in material and workmanship" for 48 months with unlimited mileage from the vehicle's in-service date (the "Limited Warranty"). (*Id.* at 1.) As a remedy, the Warranty states that Defendant "at its option will replace or issue a credit" for the "cost of any unit determined to be defective." (*Id.* at 2.) Additionally, it states "[t]he liability under this Warranty Policy shall not exceed [the] purchase price paid."[3] (*Id.*)

---

[3] This line of the Warranty appears in bold print.

Finally, the Warranty provides that "[t]his warranty is in lieu of all other warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose and all other obligations or liabilities, including liability for incidental, special, consequential damages, or labor" (the "Disclaimer").[4]  (*Id.*)

Defendant argues Plaintiff cannot recover any damages beyond those in the Limited Warranty.  (Def.'s Reply Supp. Mot. Summ. J. at 9, ECF No. 97, hereinafter "Def.'s Reply.")  Plaintiff contends the Warranty fails its essential purpose and is unconscionable and thus, is invalid.[5]  (Pl.'s Resp. at 7.)

Contracting parties are free to determine which implied warranties shall accompany their transaction.  *Chemtrol*, 537 N.E.2d at 638; *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 549 (N.D. Ohio Oct. 16, 2006).  "Accordingly, both the implied warranties of merchantability and of fitness may be excluded or modified."  *Id.* (citing Ohio Rev. Code § 1302.29(B)).  Similarly, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.'"  *Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-cv-1131, 2005 U.S. Dist. LEXIS 191458, at *26 (S.D. Ohio Aug. 18, 2015) (citing *Cipollone v. Ligett Grp., Inc.,* 505 U.S. 504, 525 (1992)).

Thus, "[t]he general rule is that a seller may legitimately limit the buyer's remedies to 'return of the goods and repayment of the purchase price or to repair and replacement of nonconforming goods or parts.'"  *Traxler v. PPG Indus.*, 158 F. Supp. 3d 607, 613 (N.D. Ohio 2016) (citing Ohio Rev. Code § 1302.93(A)(1)).  The purpose of this remedy is to "grant the seller

---

[4] This line of the Warranty appears in all capital letters.

[5] Defendant contends Plaintiff only argues that the Limited Remedy is invalid and not the Disclaimer.  (Def.'s Reply at 7–8.)  The Court sees how Defendant could believe this as Plaintiff's response brief is not particularly clear as to which aspect of the Warranty Plaintiff believes is invalid.  The Court believes, however, that Plaintiff is arguing the Warranty in its entirety is unenforceable due to both the Limited Warranty and the Disclaimer working together to limit damages.  (*See* Pl.'s Resp. at 8 (noting that enforcement of the Warranty would lead to the recovery of "another equally defective brake chamber" and nothing further, which is a result of both the Limited Warranty and Disclaimer).)

the opportunity to cure the defect yet reduce its risks" and "ensure that the purchaser receives a product which conforms to the [] warranty." *Id.* (citing *Zaremba*, 458 F. Supp. 2d at 549); *Protek v. Lake Erie Screw Corp.*, No. 2005VA000018, 2005 Ohio App. LEXIS 5371, at *28 (Ohio Ct. App. Nov. 7, 2005). A limited warranty, however, will fail if the limitation is unconscionable or fails its essential purpose. *Id.* (citing Ohio Rev. Code §§ 1302.29(D), 1302.93); *Chemtrol*, 537 N.E.2d at 638.

### a. Failure of a Warranty's Essential Purpose

"A limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchaser without a remedy." *Traxler*, 158 F. Supp. 3d at 614 (citations omitted); *Adelman's Truck Parts Corp. v. Jones Transp.*, 797 F. App'x 997, 1002 (6th Cir. 2020); *Siriano*, 2015 U.S. Dist. LEXIS 191458 at *26–27; *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 7 F. Supp. 2d 954, 966 (N.D. Ohio 1998). Courts recognize two ways in which a replace, repair, or refund remedy can fail its essential purpose by leaving the purchaser without the value of its bargain. The first is when the manufacturer is unable or unwilling to meet its replace, repair, or refund obligation. *See id.* ("[Repair or replace] clauses are generally upheld unless a seller is unable or unwilling to comply within a reasonable time." (citing *Zaremba*, 458 F. Supp. 2d at 549)); *Adelman's Truck*, 797 F. App'x at 1001–02; *Chemtrol*, 537 N.E.2d at 639; *see e.g., Haithcock v. Graham Ford., Inc.*, No. 81AP-935, 1982 Ohio App. LEXIS 13229, at *11–14 (Ohio Ct. App. Dec. 30, 1982) (finding that because the seller was unable to repair the product, despite several attempts to do so, the limited remedy failed its essential purpose). In these instances, courts can decide the question as a matter of law. *Id.*; *Chemtrol*, 537 N.E.2d at 639.

Additionally, "[a] purchaser can be deprived of the value of its bargain where the goods purchased under the contract contain latent defects, which are defects that are not detectable until it is impractical to effectuate the exclusive remedy."[6] *Lincoln Elec. Co.*, 2010 WL 2219341 at *5 (citations omitted); *see also Daniel A. Terrieri & Sons Inc. v. Alliance Wall Corp.*, No. 95 C.A. 11, 1996 WL 148596, at *5 (Ohio Ct. App. Mar. 29, 1996) (noting that the latent character of the defect in the product did not allow the defect to be discovered upon delivery or installation and thus, the trial court did not err in finding the warranty failed its essential purpose). In these instances, the issue of whether a remedy fails its essential purpose is most often a question of fact. *Id.* at *27; *Traxler*, 125 F. Supp. 3d at 614; *see also Chemtrol*, 537 N.E.2d at 639–40 (noting that unless a manufacturer is unable or unwilling conform to the terms of the warranty, whether it fails its essential purpose is ordinarily a question of fact).

For example, in *Traxler v. PPG Industries*, the plaintiffs purchased products branded for resurfacing weathered wood and concrete. 158 F. Supp. 3d at 611. The products ultimately damaged the decks they were applied to and diminished the value of the associated property. *Id.* The plaintiffs brought suit for breach of express and implied warranties and the defendants argued recovery was barred by the product's warranty. *Id.* at 612. The warranty limited recovery to a replacement product or refund and disclaimed any other warranties or recovery. *Id.*

The Northern District of Ohio noted that standing in isolation the warranty was typical of limited warranties in that an unsatisfied consumer could refund the purchase price or get a replacement product. *Id.* at 614. The court found, however, that in light of the fact that the product

---

[6] The Northern District of Ohio has recognized that Ohio courts have not "dealt extensively with latent defects depriving the purchaser of the benefit of its bargain." *Lincoln Elec. Co. v. Technitrol Inc.*, No. 1:08 CV 2346, 2010 WL 2219341, at *5 (N.D. Ohio June 2, 2010). Courts in many other jurisdictions, however, have found latent defects in products may deprive purchasers of the benefit of their bargain and thus, cause a warranty to fail its essential purpose. *Id.* (citing cases).

was inherently defective, and the purchase price was insignificant compared to the damages, the remedy "represent[ed] no remedy at all." *Id.* at 615. The court concluded that "[b]ecause the failure of essential purpose is a question of fact, dismissal at th[at] time [was] inappropriate." *Id.*; *see also Lincoln Elec.*, 2010 WL 2219341 at *5 (finding a genuine issue of material fact as to whether the limited warranty for a defective transformer of replace, repair, or refund, and disclaimer of all other warranties, failed its essential purpose when the plaintiffs provided evidence that the transformers contained a latent, and dangerous, defect); *Daniel A. Terrieri*, 1996 WL 148596 at *5–6 (finding the trial court did not err in finding the limitation of liability failed its essential purpose and therefore was unenforceable when the goods purchased had a latent defect not discoverable upon purchase).

In contrast, in *Siriano v. Goodman Manufacturing Company*, this Court held that while the plaintiffs showed the product was defective, they could not show the limited warranty failed its essential purpose because the plaintiffs did not invoke the replace or repair provision. 2015 WL 12748033 at *11. Importantly, the plaintiffs alleged the product they purchased failed but did not allege extensive damage to objects or persons other than the product itself. *Id.* at *1. Additionally, the plaintiffs who did request a replacement did not allege the replacement was equally defective. *Id.* at *11.

Plaintiff argues the remedy in the Warranty, which is limited to a replacement or credit, fails its essential purpose. (Pl.'s Resp. at 8.) First, Plaintiff points out the defective product causes significantly more damage that a credit is worth. (*Id.*) The brake chamber was housed within a tractor-trailer. (*Id.*) Thus, when the brake chamber burst into flames it resulted in the destruction of the overall unit it was housed in, including the larger tractor trailer and the product being carried. (*Id.*) Thus, a remedy in the form of the price of the brake chamber is essentially no remedy when

compared to the cost of the destruction. (*Id.*) Additionally, Plaintiff argues, an equally defective and dangerous replacement brake chamber is no remedy at all. (*Id.*) Defendant, in contrast, argues that the Warranty does not fail its essential purpose because Plaintiff has produced no evidence that Defendant refused to provide a remedy. (Def.'s Reply at 9.)

The Court agrees with Defendant that Plaintiff has not shown that Defendant failed to provide the remedy in the Warranty, namely, replacing the brake chamber or crediting Plaintiff for the purchase price. This case is very similar to *Traxler*, however, in that Plaintiff has provided evidence that the product had a dangerous defect undiscoverable at the time of purchase. For example, Plaintiff provided Defendant's employees' emails expressing that they knew of issues with the brakes and describing the issues as "hot wheels," "hot brake," or "hot wheel end." (*See* Pl.'s Resp. at Exs. 6–9.) Plaintiff also provided several years of Defendant's lab tests showing the springs inside the brake chambers were failing "due to torsion fatigue cracking." (*See id.* at Ex. 5.) Additionally, Defendant's metallurgist noted that the springs "have significant coil clash and are prone to corrosion pitting leading to torsional fatigue crack failure," and "the extensive coil clash and coating removal is the underlying root cause of the failures." (*Id.*) Finally, a Haldex employee testified "I know there's a defect in the spring design." (*Id.* at Ex. 2.) This evidence shows not only that the spring was dangerously defective, but also that unlike *Siriano* where the plaintiffs had not alleged a replacement would be equally defective, any replacement brake chamber likely would have had the same problem as the one Plaintiff purchased.

This evidence showing the brake chamber was inherently defective due to the design of the springs makes this situation unique. Arguably, the Limited Warranty and the Disclaimer, which standing in isolation may be typical of a valid product warranty, in this case represent no remedy at all. As in *Traxler*, replacing the product with another defective product is not a remedy.

Similarly, giving a credit for the cost of the brake chamber, when compared to damage to the entire tractor trailer and the cargo it was carrying a reasonable jury could find that the language, represents no remedy at all. Plaintiff has raised sufficient evidence to defeat summary judgment on this issue.

### b. Unconscionability

"In Ohio, unconscionability is defined as 'an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.'" *Jones v. U-Haul Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 935 (S.D. Ohio 2014) (citing *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996)). Unconscionability has two aspects: procedural and substantive. *Siriano*, 2017 WL 12748033 at *11. "Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *Id.* (citation omitted). "Specifically, the substantive prong focuses on whether the contractual terms are unreasonably favorable to the drafter, whereas the procedural aspect addresses whether there was any meaningful choice on the part of the other party regarding acceptance of the provisions." *Id.* (internal citations omitted). "[A]lthough a commercial purchaser is not doomed to failure in pressing an unconscionability claim, . . . findings of unconscionability in a commercial setting are rare." *Chemtrol*, 537 N.E.2d at 639 (internal citations omitted). "The question of the unconscionability of a contract clause is one of law for the court to decide in light of 'its commercial setting, purpose and effect.'" *Martin v. Joseph Harris Co.*, 767 F.2d 296, 299 (6th Cir. 1985) (citing Uniform Commercial Code § 2-302).

An "agreement may lawfully 'limit or alter the measure of damages recoverable . . . as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and

28

replacement of non-conforming goods or parts.'" *Traxler*, 158 F. Supp. 3d at 615 (citing Ohio Rev. Code § 1302.93(A)(1)). "A warranty disclaimer that leaves a party with a defective product and no avenue for recourse against the manufacturer[, however,] is unconscionable." *Zaremba*, 458 F. Supp. 2d at 549 (quoting *Westfield Ins. Co. v. Huls Am., Inc.*, 714 N.E.2d 934, 950 (Ohio Ct. App. 1998)).

This Court has previously looked to the Fourth Circuit case *Carlson v. General Motors Corporation*, to determine whether a warranty on a defective product was unconscionable. *See In re Porsche Cars*, 880 F. Supp. 2d at 821–22 (citing *Carlson*, 883 F.2d at 294–97). In *Carlson*, the Fourth Circuit provided several examples of unconscionability. 883 F.2d at 294–97. The Fourth Circuit noted that when a manufacturer is aware that its product is inherently defective and the buyer has no notice of, or ability to detect, the problem, "there is perforce a substantial disparity in the parties' relative bargaining power." *Id.* at 296. The *Carlson* Court suggested that the contracting parties' knowledge disparity is perhaps the "most significant" factor in the unconscionability analysis. *Carlson*, 883 F.2d at 294; *see also Traxler*, 158 F. Supp. 3d at 616–17 ("Courts have found as unconscionable situations where the seller failed to disclose latent defects of which it had knowledge and the buyer had no meaningful choice in determining the warranty's terms.") (citing cases); *Siriano*, 2015 WL 12748033 at *11 (finding unequal bargaining power plausible among purchasers and the manufacturer when the manufacturer had "some degree of knowledge as to its products' defect," the manufacturer made false representations as to the quality of its products, and the purchasers were unable to detect the alleged defects); *Martin*, 767 F.2d at 301–02 (affirming the trial court's finding of unconscionability in an agreement between commercial parties when the product had a latent defect only known to the manufacturer, the defect was in the manufacturer's control, and the defect was not known to the buyer at the time of

purchase); *In re Porchse Cars*, 880 F. Supp. 2d at 822–23 (finding plaintiffs sufficiently pled facts to show procedural and substantive unconscionability by alleging the seller knew the product was inherently defective, did not disclose this fact to purchasers, and the defect could not be detected by purchasers); *Zaremba*, 458 F. Supp. 2d at 549 (finding no unconscionability because there was no disparity in bargaining power when both parties were familiar with the market and the common terms in purchase agreement and there was no allegation that the seller knew about any latent defect at the time of the sale).

"Similarly, facts suggesting that the stronger party knew that the weaker party would be unable to receive substantial benefit from the contract invokes both procedural and substantive unconscionability." *Id.* (citing *Carlson*, 883 F.2d at 296). "Courts have also found as unconscionable situations where the disparity in cost between the refund and the damage the product caused was unconscionably low." *Traxler*, 158 F. Supp. 3d at 616–17 (citing cases); *In re Porchse Cars*, 880 F. Supp. 2d at 822–23 (finding plaintiffs sufficiently plead facts to show procedural and substantive unconscionability through allegations that the defective product could significantly damage other parts of the vehicle it was placed within and buyers would bear the cost of correcting this defect which was significantly more expensive than cost of the original item).

Plaintiff argues the Warranty is unconscionable because Defendant had prior knowledge of its product's defect and the Warranty limits Plaintiff's recoverable damages to the cost of the brake part. (Pl.'s Resp. at 9–12.) Defendant argues Plaintiff has failed to meet its burden to establish unconscionability, because the case is similar to *JBlanco Enterprises Soprema Roofing & Watering Incorporated Barlovento LLC v. Great American Incorporated*, No. 1:13-cv-2831, 2016 WL 6600423, at *7–9 (N.D. Ohio Nov. 8, 2016). (Def.'s Reply at 10–12.) Defendant also

contends Plaintiff has experience purchasing these products, this type of warranty is common in the industry, and the Warranty does not leave Plaintiff without a remedy.[7]  (*Id.*)

The brake chamber in question was manufactured in January of 2016.  Plaintiff has provided evidence that Defendant knew about the defect at least in 2016, if not prior.  For example, Plaintiff provides documents where Defendant's employees referred to the brake chambers as "hot wheels," "hot brake," and "hot wheel end," in reference not only to the event Plaintiff's driver experienced but also many other events prior to Plaintiff's, involving "explosions," "fires," and "thermal incidents." (*See* Pl.'s Resp. at Exs. 6–9.)  These emails were sent in 2018 and referenced events as far back as 2015. (*See id.*)  Additionally, the lab reports noting the issues with the springs were done as far back as May of 2014. (*See id.* at Ex. 5.)  Finally, Mr. Jamieson, a former employee of Defendant's who had worked there for several years, testified about the defect in the spring, Defendant's knowledge of such, and Defendant's effort to cover it up. (*See id.* at Ex. 2).  This evidence also shows Defendant knew about the defect and the defect was in Defendant's control.

In contrast, Defendant offered no evidence that it did not know about the defect when it sold Plaintiff the product or that it was not in control of the defect.  Thus, the evidence shows that Defendant knew about the defect at some point prior to the accident, possibly as far back as 2014.

Plaintiff, at the time of purchase, did not know about the defect, and could not have known about the defect.  The defect with the spring that Mr. Jamieson describes is highly technical. (*See* Pl.'s Resp. at Ex. 2 (describing the defect: "[t]he spring in its installed state is too highly stressed. And during the normal course of its life, once the paint degrades because of the installed state its

---

[7] Defendant also argues Plaintiff has only presented an argument as to the Limited Warranty and not the Disclaimer, but as stated above, the Court reads Plaintiff's argument to apply to the entire Warranty.  This is in line with how other courts have addressed arguments that warranties are unconscionable. *See e.g., Traxler*, 158 F. Supp. 3d at 616 (noting that the question is whether the clause limiting the remedies to a refund or replacement *and* excluding other consequential damages is unconscionable); *In re Porsche Cars*, 880 F. Supp. 2d 801 at 821–22 (considering whether the warranty was unconscionable when it both limited the warranty and later excluded all other warranties).

got the coil stacked very close").) Defendant alleges Plaintiff had experience purchasing products for its trucks, but neither party alleges Plaintiff has any technical engineering knowledge which would have alerted it to the defect in the spring at the time it was put into the truck.

Thus, despite the fact that both parties were commercial parties with previous experience in the field, the unique facts of this case show the two parties had vastly different knowledge with regards to how this brake chamber would operate in Plaintiff's truck. This points to procedural unconscionability. *See Carlson*, 883 F.2d at 296; *Siriano*, 2015 WL 12478033 at *11.

Additionally, the Court finds there is substantive unconscionability because the refund Plaintiff could receive under the Warranty is unconscionability low. *Traxler*, 158 F. Supp. 3d at 616–17. The facts of this case show that the damage was extensive. The defective product destroyed not only the product, but also the trailer the brake was housed inside and the cargo inside the trailer. Refunding Plaintiff for the brake, or worse providing Plaintiff with another dangerously defective brake, does not give Plaintiff the benefit of its bargain under the contract. *See In re Porsche Cars*, 880 F. Supp. 2d at 822–23.

The Court disagrees with Defendant's assertion that this case is like *JBlanco*. In *JBlanco*, the Plaintiff argued that roofing materials it had purchased caused a roof discoloration, cracking, and blistering, and thus, the roof needed to be replaced. 2016 WL 6600423 at *6. The plaintiff argued the warranty was unconscionable. *Id*. As part of the transaction the parties entered into an agreement that expressly disclaimed all warranties. *Id*. The Court noted that parties in Ohio are free to contract around warranties as long as disclaimers are conspicuous. *Id*. (citing *Ins. of N. Am. v. Automatic Sprinkler Corp. of Am.*, 423 N.E.2d 151 (Ohio 1981)). The court found the disclaimer conspicuous as it was in bold face type and capital letters. *Id*. at *7. The court found no procedural unconscionability because the parties, both of whom had experience with contracts such as this

one, had equal bargaining power. *Id.* at \*8.  Similarly, the court found no substantive unconscionability because the contract was standard in the industry and there was no evidence it was commercially unreasonable. *Id.*

*JBlanco* is distinguishable from the instant case.  First, in *JBlanco*, there was no allegation that either party had superior knowledge about a latent defect in the roofing materials that would cause inconsistent knowledge among two commercial parties experienced in the industry.  Here, in contrast, as discussed above, the knowledge difference between the parties was severe.  Additionally, the *JBlanco* court noted the allocation of risk was standard in the industry and thus both parties were able to accurately predict the extent of their respective future liabilities.  On the other hand, in the instant case Plaintiff was certainly not able to predict the extent of its future liability.  Defendant has not attempted to argue that Plaintiff could predict that it would be liable for the costs of a fire caused by the defective brake product destroying a trailer and cargo within it.  Thus, the facts of *JBlanco* differ substantially from the instant case.

In sum, while under normal circumstances this commercial warranty may be typical of the industry, Plaintiff's evidence, which Defendant has not attempted to rebut, shows this was not a typical circumstance.  The Court finds as a matter of law that the Warranty is unconscionable. *See Martin*, 767 F.2d at 299 (noting the unconscionability of a contract is a question for the Court to decide as a matter of law).  Thus, Plaintiff can go forward with its case and seek damages without being limited to those allowed by the Warranty.

The Court has found both that the Warranty is unconscionable as a matter of law, and that there is a genuine dispute of material fact as to whether the Warranty fails its essential purpose.  Therefore, the Court **DENIES** Defendant's motion for summary judgment as to Count IV on the basis that the damages Plaintiff seeks cannot be obtained.

## V.

In sum, in accordance with this Opinion: Plaintiff's Motion for Leave to File a Second Amended Complaint Instanter (ECF No. 83) is **GRANTED**.  Additionally, Defendant's Motion in Limine (ECF No. 74) is **DENIED**.  Finally, Defendant's Motion for Summary Judgment (ECF Nos. 47, 93) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

6-16-2020
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**